IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DIANE M. WETZEL, | § | |
| | § | |
| *Plaintiff*, | § | 5-17-CV-00364-RBF |
| | § | |
| vs. | § | |
| | § | |
| NANCY A. BERRYHILL, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION; | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## ORDER

This Order concerns Plaintiff Diane Marie Wetzel's request for judicial review of the administrative denial of her application for disability insurance benefits under Title II of the Social Security Act. This action was assigned to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules, and the docket management order entered on September 29, 2017, in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration, *see* 42 U.S.C. § 405(g), and the undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(c) as both parties have consented to magistrate jurisdiction. *See* Dkt. Nos. 8 & 9.[1]

After considering Wetzel's Brief, Dkt. No. 13, the Brief in Support of the Commissioner's Decision, Dkt. No. 14, the transcript of the administrative proceedings ("Tr."), Dkt. No. 10, the other pleadings on file, the applicable authorities and regulatory provisions, and the entire record in this matter, the Court finds that substantial evidence supports the

---

[1] In light of the parties' consents, the District Court reassigned this case to U.S. Magistrate Judge John W. Primomo for all proceedings and the entry of final judgment. *See* Dkt. No. 11. The case was then administratively reassigned to the undersigned upon Judge Primomo's retirement.

Commissioner's decision and that the administrative proceedings involved no reversible legal error. The Commissioner's decision is therefore **AFFIRMED**.

## I.  Background

Plaintiff Wetzel filed her application for disability insurance benefits on December 22, 2014, alleging a disability onset date of February 1, 2013. Tr. 171. Wetzel later amended her alleged disability onset date to February 13, 2014. *Id.* 60, 210. Wetzel was 58 years old on the date she alleges she became disabled and 60 years old at the time of the Administrative Law Judge's ("ALJ") decision. Wetzel has a high school education, two years of college coursework, and prior relevant work experience as an Occupational Therapy Assistant. *Id.* 78-80, 199. Wetzel alleged the following impairments render her disabled: obesity; type-2 diabetes; hypothyroidism; high cholesterol; rheumatoid arthritis; and issues with her weight bearing joints (hip). *Id.* 198.

Wetzel's claim was initially denied on May 4, 2015, *id.* 109-112, and once again on August 5, 2015 upon her request for reconsideration, *id.* 117-19. Following the denial of her claims, Wetzel requested an administrative hearing. *Id.* 26. Wetzel and her attorney attended the administrative hearing on July 8, 2016, at which Wetzel and vocational expert Teri Hewitt testified. *Id.* 52-92.

The ALJ denied Wetzel's claim for benefits. *Id.* 31-43. In reaching that conclusion, the ALJ found Wetzel met the insured-status requirements of the Social Security Act through December 31, 2018. The ALJ then applied the five-step sequential analysis required by the regulations. At step one of the analysis, the ALJ found that Wetzel had not engaged in substantial gainful activity since the alleged onset date of February 13, 2014. *Id.* 33. At step two, the ALJ found that Wetzel has the following severe impairments: polyarthralgia; lumbar degenerative disc disease; and obesity. *Id.* 33-34. The ALJ, however, found that the following diagnosed conditions were not severe because they caused only transient and mild symptoms and

limitations, are well-controlled with treatment, have not met the twelve-month durational requirement, or are otherwise not adequately supported by the medical evidence in the record: diabetes; sensorineural hearing loss; hypothyroidism; bilateral cataracts; urinary incontinence; and depression. *Id.* 34-37. The ALJ also found that Wetzel's diagnosed degenerative joint disease was not a medically determinable impairment because it was "not supported by any medical imaging or other objective signs." *Id.* at 37. At step three, the ALJ found that none of these impairments met or medically equaled the impairments of one of the listed impairments in the applicable Social Security regulations. *Id.*

Before reaching step four of the analysis, the ALJ found that Wetzel retained the physical and mental residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), with the following limitations:

> [Wetzel] can occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds; she can stand and/or walk about 6 hours in an 8-hour workday; and she can sit about 6 hours in an 8-hour workday. She can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. She can frequently handle, finger and feel with her bilateral upper extremities.

*Id.* 38.

At step four, after considering this residual functional capacity and the testimony of the vocational expert, the ALJ determined that Wetzel was able to perform the past relevant work of occupational therapy assistant, which is listed as medium skilled work. *Id.* 41. Alternatively, the ALJ conducted a step-five analysis and found that considering Wetzel's age, educational factors, prior work experience, and residual functional capacity, as well as the testimony of the vocational expert, there were jobs existing in significant numbers in the national economy that Wetzel could perform, namely, the positions of hand packager (DOT ("Department of Transportation") 920.587-018), kitchen helper (DOT 318.687-010), and deliverer of merchandise

(DOT 299.477-010). *Id.* 42. Accordingly, the ALJ determined that Wetzel was not disabled for purposes of the Social Security Act, and therefore was not entitled to receive benefits. *Id.*

Wetzel subsequently requested review of the ALJ's finding, but her request for review was denied by the Appeals Council. *Id.* 1-5. On April 25, 2017, after exhausting all available administrative remedies, Wetzel filed suit for judicial review of the administrative determination. Dkt. No. 1.

## II.    Legal Standards

*Standard of Review.* To review the denial of benefits, a court determines only whether the Commissioner's decision applied the proper legal standards and is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

A reviewing court will "weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

A reviewing court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not a court, to resolve. *Id.* Factual findings

supported by substantial evidence are conclusive; legal conclusions and claims of procedural error are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479-80 (N.D. Tex. 2001).

*General Entitlement to Benefits*. The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant like Wetzel is disabled only if her physical or mental impairment or impairments are so severe that she is unable to perform her previous work and cannot—considering her age, education, and work history—participate in any other kind of substantial gainful work that exists in significant numbers in the national economy and regardless of whether such work exists in the area in which she lives, a specific job vacancy exists, or she would be hired if she applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

*Overview of the Evaluation Process and Burden of Proof*. "To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents him [or her] from engaging in any substantial gainful activity." *Carr*, 133 F. Supp. 2d at 479. To determine whether substantial gainful activity is possible, the pertinent regulations require a five-step sequential inquiry. *See id*.; 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual working

and engaging in substantial gainful activity will not be found disabled, regardless of medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b).

Step two addresses whether the claimant has a medically determinable physical or mental impairment that is severe, or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quotation marks omitted). An individual without a "severe impairment" will not be considered disabled. 20 C.F.R. § 404.1520(c).

At step three, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations ("the Listings") will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). But if the claimant does not qualify under the Listings, then the evaluation continues to the fourth step. Before commencing the fourth step, the claimant's residual functional capacity is assessed. This involves a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).

At the fourth step, the residual-functional-capacity assessment and the demands of the claimant's past relevant work are reviewed. 20 C.F.R. § 404.1520(f). Past relevant work constitutes either "the actual demands of past work" or "'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen,* 829 F.2d 524, 527 n.2 (5th Cir. 1987) (quoting SSR 82-61). If an individual is capable of

performing the work she has actually performed in the past or as defined by the DOT, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

The fifth step evaluates the claimant's ability—given residual capacities, age, education, and work experience—to perform other work. 20 C.F.R. § 404.1520(g). If an individual's impairment precludes performing any other type of work, the claimant will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies her burden under the first four steps, the burden then shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back again to the claimant to prove inability to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step evaluation is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## III. Analysis

Wetzel complains that the ALJ committed three errors that each require remand. First, Wetzel argues the ALJ reversibly erred by failing to provide "good/specific/supported" reasons for affording her treating physician David J. Sanderock's opinions little weight. To this end, she argues that the ALJ erred by failing to consider each of the six factors set forth in 20 C.F.R. § 404.1527(c). Second, Wetzel argues the ALJ erred at step two in determining that her degenerative joint disease of the knees was not medically determinable. This error, according to Wetzel, led the ALJ to fail to consider additional limitations when assessing her residual

functional capacity. Third, Wetzel argues the ALJ's credibility finding is flawed because the ALJ "failed to even acknowledge" her "stellar work history."

For the reasons discussed below, the Court finds that the ALJ properly analyzed Dr. Sanderock's opinions in accordance with applicable law. Alternatively, any associated error in that regard is harmless on this record. The Court also finds that the ALJ did not commit reversible error at step two in determining that Wetzel's degenerative joint disease of the bilateral knees was not a medically determinable impairment or in assessing Wetzel's credibility.

*Dr. Sanderock's opinions.* As her first point of error, Wetzel argues the ALJ erred by failing to analyze the opinions of Wetzel's primary care provider, Dr. Sanderock, "in accordance with the regulations, Agency policy, and Fifth Circuit precedent." Had Dr. Sanderock's opinions properly been afforded controlling weight, Wetzel argues, the ALJ would have found her disabled. The Court disagrees.

Dr. Sandercock provided two medical opinions regarding Wetzel's physical abilities, both of which assessed Wetzel with severe physical limitations. In his January 29, 2015 assessment, Dr. Sandercock opined that Wetzel was unable to sit or stand for more than five minutes at a time and in an 8-hour workday, and that she could only sit or stand for less than two hours. Tr. 592. He further opined that Wetzel would need a job that would permit her to shift from sitting, standing, or walking at will, and he estimated that she would need to take unscheduled breaks approximately eight times in an 8-hour workday, with each break lasting 15 minutes. *Id.* 592-93. He further stated that Wetzel could use her hands to grasp, turn, and twist objects, and that she could use her fingers for fine manipulations, for half the work day. *Id.* He opined she could only use her arms for reaching no more than a quarter of the day. *Id.* He found that Wetzel could never twist, stoop, crouch, climb stairs, or climb ladders. He recommended that she avoid exposure to the following elements: extreme cold; extreme heat; high humidity;

fumes; odors; dusts; gases; cigarette smoke; soldering fluxes; solvents/cleaners; and chemicals. *Id.* Finally, Dr. Sandercock estimated that Wetzel's impairments would result in her absence from work on average twice a month. *Id.* All of these limitations, according to Dr. Sandercock, allegedly resulted from Wetzel's polyarthralgia, lumbar degenerative joint disease, knee degenerative joint disease, diabetes, and right ankle fracture. *Id.* 592.

On May 28, 2015, Dr. Sandercock provided a second medical opinion regarding Wetzel's limitations that allegedly resulted from her diabetes, arthritis, and hypothyroidism. This second opinion provides for a slightly lesser degree of physical limitations. *Id.* 401-02. According to this second opinion, Wetzel could sit no more than 30 minutes and could stand no more than 10 minutes at a time but was still limited to sitting, standing, and walking less than two hours in an 8-hour work day. *Id.* He also opined that Wetzel could occasionally twist and stoop. *Id.* Even with these slightly less severe limitations (as compared his first opinion), Dr. Sandercock estimated that Wetzel's impairments would cause her to be absent more than twice a month from work. *Id.* Dr. Sandercock did not reference any medical evidence when providing either opinion and both opinions were provided using standard "checklist" forms.

Although the ALJ acknowledged that Dr. Sandercock was a treating provider and that his opinion must be considered in accordance with SSR 96-2p, which is the Commission's guidance regarding when treating source medical opinions are entitled to controlling weight, the ALJ ultimately afforded Dr. Sandercock's opinions "little weight." *See id.* 40. The ALJ not only made this determination but also explained why. The ALJ explained that Dr. Sandercock "did not support [his] opinion[s] with reference to medical signs or clinic observations laboratory findings [sic] consistent with [his] opinion[s]." *Id.* The ALJ also noted that Dr. Sandercock's opinion "is premised on impairments not reasonably consistent with the environmental limitations that [he] provided [in the opinion]." *Id.*

According to the so-called treating physician's rule, "an evaluation by the claimant's treating physician should be accorded great weight" but only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting 20 C.F.R. § 404.1527(d)(2)).[2] Thus, a treating physician's opinion is not conclusive under this rule, and such opinions "may be assigned little or no weight when good cause is shown." *Newton*, 209 F.3d at 455-56. "Good cause" exists for discounting the weight of a treating physician's opinion where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Id.* An ALJ may also reject a treating physician's opinion pursuant to the treating physician's rule if the ALJ finds, with support in the record, that the treating physician's opinion is not credible because the physician is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). Accordingly, an "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez*, 64 F.3d at 176 (treating physician's opinion that plaintiff was totally disabled was not entitled to controlling weight because the physician failed to provide a medical explanation for his opinion, and the opinion was inconsistent with the opinions of two other physicians, both of whom based their opinions on clinical test results).

The undersigned notes that the Social Security Administration published a new rule, applicable to claims filed on or after March 27, 2017, which eliminated the rule that treating

---

[2] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and the court's reference to subsection (d)(2) refers to the factors now present at subsection (c) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (effective August 24, 2012 to March 26, 2017) and 20 C.F.R. § 404.1527 (effective March 27, 2017, applicable "[f]or claims filed . . . before March 27, 2017).

sources be given controlling weight. *See* 20 C.F.R. § 404.1520c. But because Wetzel filed her claim before March 27, 2017, the pre-amendment version of the rule applies here. *See* 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

Here, as the Commissioner correctly notes, Dr. Sandercock's opinions are directly contradicted by his own contemporaneous clinical observations, as well as the contemporaneous reports from other examining physicians. Indeed, just two days before Dr. Sandercock rendered his first opinion that Wetzel was unable to stand for more than five minutes at a time, climb stairs, or bend at the waist, Dr. Sandercock reported the following during his physical examination of Wetzel:

> Normal gait; grossly normal tone and muscle strength; full, painless range of motion of all major muscle groups and joints no masses, effusions, misalignment, crepitus, or tenderness in major joints.

Tr. 303.

The record reflects that other examining physicians made similar observations. Specifically, in a March 2, 2015 treatment note, rheumatologist Mark Nelson found Wetzel to have a "normal gait," *id.* 508, and noted there was "certainly no evidence of rheumatoid arthritis," *id.* 509. These findings were consistent with Dr. Nelson's prior examinations in March and July 2014, *id.* 518, 524, and his later examination in July 2016, *id.* 711. And, as the ALJ specifically noted, Dr. Nelson observed that although Wetzel presented with a weakly positive rheumatoid factor and positive anti-CCP bodies, she had not developed any signs or symptoms of rheumatoid arthritis as late as July 13, 2016. *Id.* 34 (citing *id*. 711). Doctor Michael E. Oliver and Nurse Practitioner Yvonne Paredes, both of whom examined Wetzel in March 2016, similarly observed Wetzel's normal gait and muscle strength, which the ALJ noted in her opinion. *Id.* 40 (citing *id*. 546, referencing portions of Dr. Oliver's report in which he noted that

Wetzel had "negative straight leg raise testing bilaterally and a normal gait" and had improved as of March 2016); *see also id.* 39 (referencing portions of Paredes's report, which provides that Wetzel's gate was "nonantalgic but guarded," she could walk on her toes and heels without difficulty, and her "[s]trength is 5/5 in all muscle groups"). Finally, although Dr. Sandercock's second opinion provides for a slightly lesser degree of physical limitation as compared to those set forth in his first opinion, he nonetheless opined that Wetzel's absences would for some reason increase when compared to those set forth in his first opinion.

For these reasons, good cause supports that ALJ's decision to afford Dr. Sandercock's opinions little weight. *See Newton*, 209 F.3d at 455-56; *see also Greenspan*, 38 F.3d at 237 (noting that "good cause" for rejecting a treating provider's medical opinion exists where the opinion is "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence"); SSR 96-2P, 1996 WL 374188 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.").

Because Dr. Sandercock's opinions are conclusory and unsupported by medically acceptable clinical and laboratory diagnostic techniques, there is good cause to afford them little or no weight. *See Newton*, 209 F.3d at 456. Accordingly, it is arguable whether the ALJ was required to perform a detailed analysis of every one of the six factors set forth in 20 C.F.R. § 404.1527(c), which are sometimes referred to as the "*Newton* factors."[3] But even if *Newton*

---

[3] *See, e.g., Palmer v. Barnhart,* No. A 06 CA 147 SS, 2007 WL 628760, at *3 (W.D. Tex. Feb. 22, 2007) ("The ALJ may also reject the opinion of any physician without applying the *Newton* factors, when the evidence supports a different conclusion or when an opinion is brief, conclusory, or unsupported by acceptable techniques.") (citing *Spellman v. Shalala*, 1 F.3d 357,

were to apply so strictly here, the ALJ's analysis would suffice under the circumstances. *See Stancle*, 2016 WL 3172784 at *11 (recognizing that "[t]he sufficiency or lackthereof of an analysis under 20 C.F.R. § 1527(c)(2) is a fact based analysis"). The ALJ recognized that Dr. Sandercock provided the opinion in the context of a treating relationship, which is the threshold issue set forth in *Newton* factor one.[4] *See* Tr. 40 ("This source is an acceptable medical source who offered their opinion in the context of a treating relationship with the claimant. Accordingly, the undersigned considered this opinion in accordance with SSR-96-2p in addition to all other applicable Social Security Administration rules and regulations."). The ALJ also expressly discussed *Newton* factors three (lack of supportability of the opinion, including lack of medical signs or clinical observations) and four (lack of consistency of the opinion with the record as a whole, and, in particular, the various treatment notes discussing Wetzel's normal gait and responsiveness to treatment). Factor five (Dr. Sandercock's lack of specialization) is implicitly recognized by the fact that the ALJ refers to him as Wetzel's primary-care provider. Ultimately, in affording Dr. Sandercock's opinion little weight, the ALJ relied on the lack of supportability of the opinion (factor three), the contradictory objective medical evidence (factor four), records indicating that treatment (in the form of a TENS unit, cortisone injections, oral medications, and aquatic therapy) was partially effective, and Wetzel's own reports that she could drive a car and

---

354-65 (5th Cir. 1993)); *see also Stancle v. Colvin*, No. 4:15-CV-00405-CAN, 2016 WL 3172784, at *9 (E.D. Tex. Jun. 7, 2016) (recognizing that "good cause" exists to assign little weight to a treating physician's opinion without discussing each of the *Newton* factors where the opinion is brief or conclusory) (collecting authorities).

[4] *See Mathews v. Colvin*, No. 4:14-CV-906-BL, 2016 WL 75081, at *3 (N.D. Tex. Jan. 6, 2016) (explaining that factor one—the examining relationship—addresses whether the medical opinion is from a treating source, non-treating source, or non-examining source); *see also* 20 C.F.R. § 1527(c)(2) ("When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion").

had recently been traveling and moving luggage (factor six), which undermined her credibility. *See id.* 34, 39-41. Such an analysis satisfies *Newton* in these circumstances. *See, e.g.*, *Nguyen v. Colvin*, No. 4:13-CV-2957, 2015 WL 222328, at \*11 (S.D. Tex. Jan. 14, 2015) (ALJ satisfied *Newton* where he did not "summarily reject the opinion of a treating physician solely based upon the conclusions of a non-examining medical expert).

Absent from the ALJ's discussion is an explicit discussion of factor two—the treatment relationship, including the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment provided. The ALJ could perhaps also have provided a more robust discussion of how Dr. Sandercock's own opinions were internally inconsistent with his treatment notes. But Wetzel has failed to show how inclusion of these matters could have led to a different conclusion by the ALJ. And although not expressly discussed by the ALJ, the record includes the information relevant to factor two, including the different appointments and treatments, the length of the treatment, the frequency of the examination, and the extent of the treating relationship. In light of this and the lack of supportability, inconsistency, and conclusory nature of Dr. Sandercock's opinions, the ALJ's failure to explicitly discuss every single *Newton* factor, to the extent this would have been required under these circumstances, is harmless on this record.[5]

---

[5] *See, e.g.*, *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.")); *Dunn ex rel. K.D. v. Colvin*, No. CIV.A. 13-408-JJB, 2015 WL 1476806, at \*4 n.3 (M.D. La. Mar. 31, 2015) (noting that "[a]n error is harmless unless there is reason to think that remand might lead to a different result"); *Parker v. Astrue*, No. CIV.A. 11-294-SCR, 2012 WL 5384821, at \*7 (M.D. La. Nov. 1, 2012) (ALJ's failure to cite and specifically discuss each *Newton* factor harmless); *Guerra v. Colvin*, No. M-15-038, 2016 WL 1166337, at \*5-6 (S.D. Tex. Feb. 5, 2016) (same); *see also Brock v. Astrue*, No. 3-10-CV-1399-BD, 2011 WL 4348305, at \*4 (N.D. Tex. Sept. 16, 2011) (affirming ALJ's decision even though he did not make a "specific finding" as to each of the *Newton* factors and noting, "[t]he ALJ need not recite each factor as a litany in every case").

Contrary to Wetzel's arguments, the ALJ did not impermissibly rely "upon her lay analysis of the raw medical data to reject the treating source opinion." Pl. Br. at 13. "The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985); *see also Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (explaining that "the determination of residual functional capacity is the sole responsibility of the ALJ"). The ALJ assessed the objective medical evidence as required, and the Court must here "give[] great deference to the ALJ's residual functional capacity determination because it is 'precisely the kind of determination that the ALJ is best positioned to make.'" *Jacquez v. Colvin*, No. 3:12-CV-00370-ATB, 2013 WL 5522661, at *8 (W.D. Tex. Oct. 2, 2013) (quoting *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)).

*Wetzel's alleged knee impairment*. Wetzel argues in her second point of error that the ALJ reversibly erred in determining that her degenerative joint disease in her knees was not a medically determinable impairment. She contends that "[t]he medical evidence of record plainly demonstrates [her] diagnosed knee impairment," and that this alleged step-two error resulted in a residual-functional-capacity assessment that did not include all of her documented impairments.

The ALJ recognized that Wetzel had been diagnosed with degenerative joint disease in her knees, but ultimately determined that this diagnosis was "not supported by any medical imaging or other objective signs." Tr. 37 (citing Tr. 500). To prove that she is disabled within the meaning of the Social Security Act, Wetzel must show a "medically determinable" impairment. *Greenspan*, 38 F.3d at 239 (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Mayeux v. Comm'r of the Soc. Sec. Admin.*, No. 16-755-EWD, 2018 WL 297588 at *4 (M.D. La. Jan. 4, 2018) ("The burden of providing the existence of a medically determinable impairment, part of the analysis at the second step, is on the Plaintiff."). "Such an impairment must be demonstrated by 'medically

acceptable clinical and laboratory diagnostic techniques.'" *Greenspan*, 38 F.3d at 239 (quoting 42 U.S.C. § 423(d)(3) and citing 20 C.F.R. § 404.1508).

The Court partially agrees with Wetzel. There is some (albeit minimal) objective medical evidence reflecting that she suffers from knee impairment. *See, e.g.*, Tr. 331 (observing after conducting an examination that "[p]atient does have at least moderate degenerative arthritis in both knees with valgus deformities"). But to obtain remand, Wetzel must show that the ALJ committed an error at step-two that was harmful. *See Gills v. Colvin*, No. 3:11-CV-2962-BH, 2013 WL 1294651 *19 (N.D. Tex. Mar. 29, 2013) (noting "application of harmless error analysis is appropriate in cases where the ALJ proceeds past step 2 in the sequential evaluation process"). This she fails to do because the alleged error she invokes here does not "affect the substantial rights of a party." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). On this record, it "is inconceivable that the ALJ would have reached a different conclusion" absent the alleged error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

To clarify, although Wetzel generally argues that "it cannot reasonably be disputed that a knee impairment would result in *numerous* symptoms that would interfere with her ability to perform 'medium work,' which involves six hours of standing and walking," Pl. Br. at 15 (emphasis in original), this ultimately is only her speculation, *see Alvarez v. Colvin*, No. 4:16-CV-00432, 2017 WL 2712872, at *4 (S.D. Tex. Jun. 22, 2017) (rejecting plaintiff's argument that the ALJ's residual-functional-capacity finding "likely would have been more restrictive" if he had found her impairment to be severe because such an argument was "only speculation"). "A mere diagnosis of an impairment," which is all that is invoked here, "is not sufficient to establish a severe impairment." *Morris v. Astrue*, No. 4:11-CV-631-Y, 2012 WL 4468185, at *8 (N.D. Tex. Sept. 4, 2012), *report and recommendation adopted*, 42012 WL 4466144 (N.D. Tex. Sept. 27, 2012). Indeed, "the question of the existence of a medically determinable impairment is

distinct from, and logically antecedent to, the question of its severity." *Randall v. Astrue*, 570 F.3d 651, 657-59 (5th Cir. 2009). Accordingly, "[a]t step two, the claimant bears the burden of proving not only that she has been diagnosed with a medically determinable impairment but also that it affects her ability to work." *Id.* (citing *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999)).

Here, in formulating Wetzel's residual functional capacity, the ALJ addressed the effect of Wetzel's polyarthralgia (joint pain) on her ability to stand and walk, including specifically Dr. Sandercock's opinions with respect to her arthritis diagnosis. Tr. at 38-40. Wetzel has offered only speculation in response; she has not shown (or even argued) that her diagnosis of degenerative joint pain of the bilateral knees, even if deemed severe, would not have been subsumed by this analysis. Accordingly, any error in this regard is harmless.

*The ALJ's Credibility Assessment.* Finally, although Wetzel acknowledges that courts afford deference to an ALJ's credibility determinations, she argues that the ALJ reversibly erred in assessing her credibility because the ALJ failed to "even acknowledge" her "stellar work history." In support of this argument, Wetzel relies on 20 C.F.R. 404.1529(c), SSRs 96-8p and 96-7p, along with three out-of-circuit decisions and a few other non-binding decisions from within this circuit. Wetzel's authority, and underlying argument, fails to persuade.

Some authority appears to point in favor of Wetzel. SSR 96-7p requires credibility assessments to be made based on all the evidence in the record, including "prior work record and efforts to work." SSR 96-7p, 1996 WL 374186, at *5. SSR 96-8p also identifies "[e]vidence from attempts to work" as a factor to consider when assessing a claimant's residual functional capacity. SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. Jul. 2, 1996). Additionally, the regulations provide that in evaluating symptoms, including pain, the ALJ "will consider all of the evidence presented, including information about your prior work record." 20 C.F.R. § 404.1529(c)(3).

And courts outside the Fifth Circuit have noted that when the record contains evidence of a strong work history, that evidence should bolster a plaintiff's credibility with respect to the plaintiff's own assessment of his or her work capabilities.[6]

The Fifth Circuit, however, does not appear to have expressly addressed whether an ALJ is required to consider a plaintiff's lengthy work history as bolstering evidence of credibility. District courts in the circuit, including in this District, have rejected imposing such a bright-line requirement on an ALJ.[7] And the district court decisions from within this circuit that Wetzel cites

---

[6] *See, e.g.*, *Taybron v. Harris*, 667 F.2d 412, n. 6 (3d Cir. 1981) ("[W]hen the claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility."); *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (holding that in evaluating the credibility of the testimony and complaints, "[t]he adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record").

[7] *See, e.g.*, *Myers v. Colvin*, No. EP-16-CV-0033-DCG-(LS by consent), 2016 WL 6069506, at *3 (W.D. Tex. Oct. 14, 2016) (rejecting plaintiff's argument that an ALJ errs when failing to consider plaintiff's excellent work history and noting that none of the cases cited by plaintiff to support this position— *Taybron*, *Rivera*, and *Polaski*— were binding on the court); *Brown v. Comm'r of Soc. Sec.*, No. 5-0-cv-11 (E.D. Tex. Feb. 14, 2013) (Dkt. No. 22*), report and recommendation adopted*, (Dkt. No. 24) (noting that *Rivera* and a later Eighth Circuit opinion are not binding authority, and that "the Court has not identified a controlling Fifth Circuit case requiring consideration of 'excellent work history' in determining a plaintiff's credibility"); *B.G. v. Comm'r of Soc. Sec. Admin.*, No. CIV.A. 09-0685, 2010 WL 3282659, at *7 (W.D. La. Jul. 22, 2010), *report and recommendation adopted*, 2010 WL 3282663 (W.D. La. Aug. 17, 2010) (rejecting plaintiff's argument that the ALJ committed reversible error by failing to touch on all of the regulatory factors including the plaintiff's "excellent work history"); *McGee v. Astrue*, No. 2:10-CV-1826, 2012 WL 7456174, at *8 (W.D. La. Nov. 26, 2012), *report and recommendation adopted*, 2013 WL 704624 (W.D. La. Feb. 26, 2013) (rejecting plaintiff's argument that the ALJ erred in failing to consider plaintiff's long work history when assessing credibility because "a claimant's work history is but one factor to consider when evaluating plaintiff's symptoms," and "the Fifth Circuit has not adopted the rule of law cited by plaintiff and espoused in the Second and Third Circuits"); *Sanchez v. Berryhill*, No. CV M-16-030, 2017 WL 2117526, at *9 (S.D. Tex. Mar. 31, 2017), *report and recommendation adopted sub nom.*, 2017 WL 2080239 (S.D. Tex. May 15, 2017) (recognizing that while other circuits have held that a claimant's good work history is entitled to substantial credibility, "this 'rule' has not been incorporated into Fifth Circuit precedent" and holding that "the ALJ was not required as a matter of law to draw such a favorable credibility inference from Plaintiff's work history (particularly to the exclusion of other evidence record)").

do not reach a contrary conclusion. Two of the decisions merely recognize the out-of-circuit authority already discussed.[8] One decision from Northern District of Texas concluded, without citing supporting authority, that this type of argument "has some validity" but that, in any event, such error is not reversible:

> This Court's analysis of plaintiff's credibility, however, is of no benefit to plaintiff. Credibility determinations are reserved to the Commission and this Court may not reconsider those determinations *de novo* or substitute its judgment for the ALJ's. The fact that this Court may have come to a different conclusion than the ALJ does not invalidate the ALJ's determination that plaintiff's subjective complaints were less then credible due to the lack of objective medical evidence. Further, while it would have been better for the ALJ to acknowledge plaintiff's 30-year consistent work history, the failure to reference such in his findings does not mean he was not aware of the history. No reversible error has been shown.

*Roberson v. Colvin*, No. 2:13-CV-197, 2015 U.S. Dist. LEXIS 39327, *20-21 (N.D. Tex. Mar. 5, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 39518 (N.D. Tex. Mar. 27, 2015).

Regardless of whether an ALJ is required to consider or give bolstering weight to a plaintiff's long work history, the record here reveals that the ALJ was aware of and actually discussed Wetzel's 30-year plus work history at the July 8, 2016 hearing. *See* Tr. 78 (pointing the vocational expert to Wetzel's work history form and specifically, to the "single job entitled Occupational Therapy Assistant, from 10/81 to 2/2013"). Moreover, in analyzing Wetzel's

---

[8] *See Lorah v. Comm'r of Soc. Sec.*, No. 14-0749, 2015 U.S. Dist. LEXIS 93237, *16-17 (W.D. La. Jun. 11, 2015) ("[W]hile claimant is correct that there is jurisprudence from other circuits holding that a claimant with a good work record is entitled to substantial credibility when claiming that she can no longer work due to a disability, that is not the case here, where claimant had a sporadic work history with gaps in some years.") (citing *Melancon v. Astrue*, No. 6:11-cv-01389, 2012 U.S. Dist. LEXIS 106882, at *19 (W.D. La. Jun. 6, 2012) (citing cases from other circuits and noting "Mrs. Melancon is correct that there is jurisprudence from other circuits holding that a claimant with a good work record is entitled to substantial credibility when claiming that she can no longer work due to a disability. But even if the ALJ had afforded Mrs. Melancon an extra measure of credibility because she was a good and faithful employee, the ALJ would remain justified in finding that Mrs. Melancon is not disabled").

statements regarding the intensity, persistence, and limiting effects of her symptoms and functional limitations, the ALJ specifically stated that she "carefully considered all of the evidence in the record." *Id.* 38. Wetzel has failed to show (or even argue) that this statement was incorrect or otherwise not credible. *See Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981) ("The ALJ expressly stated that he 'carefully considered all the testimony given at the hearing.' We have no reason to question the ALJ's general statement . . . ."). Nor has Wetzel shown that such a consideration might have led to a different decision. *See Holmes v. Astrue*, No. 3:10CV523 CWR-LRA, 2012 WL 775082, at *5 (S.D. Miss. Feb. 10, 2012), *report and recommendation adopted*, 2012 WL 775061 (S.D. Miss. Mar. 7, 2012) ("Social security errors warrant reversal and remand only if the plaintiff affirmatively demonstrates prejudice or harm.").

The ALJ was not required to "mechanically follow every guiding regulatory factor" in articulating reasons for declining to give Wetzel's work history weight in her credibility analysis. *See Clary v. Barnhart*, 214 Fed. App'x 479, 482 (5th Cir. 2007) (no error in failing to expressly consider each of seven 20 C.F.R. § 404.1529(c)(3) factors when rejecting plaintiff's testimony as not credible); *see also Undheim v. Barnhart*, 214 Fed. App'x 448, 451 (5th Cir. Jan. 19, 2007) ("An ALJ is not required to follow formalistic rules when articulating the reasons for his credibility determination"). The ALJ provided sufficient reasons and cited specific evidence to support the finding that Wetzel's "medically determinable impairments could reasonably be expected to cause some, but not all, of the symptoms and functional limitations that [she] alleges." *See* Tr. 38-41. For these reasons, the ALJ did not reversibly err by failing to specifically acknowledge Wetzel's lengthy work history in the ALJ's findings.

## IV. Conclusion

For the reasons discussed above, substantial evidence supports the Commissioner's decision and the administrative proceedings involved no reversible legal error. **IT IS**

**THEREFORE ORDERED THAT** the Commissioner's decision that Wetzel is not disabled is

**AFFIRMED.**

      **IT IS SO ORDERED.**

      SIGNED this 28th day of September, 2018.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE